856 F.2d 1120
 Bilal Ali SALAAM a/k/a Kevin Robinson; Khalil Al-Baaqee
Saleem Abdullah a/k/a Willie Blevins, Appellants,
v.
A.L. LOCKHART, Superintendent, Arkansas Department of
Correction; Larry Norris, Warden, Maximum
Security Unit, Arkansas Department of
Correction, Appellees.
 No. 87-1079.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1988.
Decided Sept. 9, 1988.
 
 Richard T. Donovan, Little Rock, Ark. (court appointed), for appellants.
 Leslie M. Powell, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before HEANEY, BOWMAN, and MAGILL, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Appellants, two Muslim inmates who legally changed their names after being committed to the Arkansas Department of Corrections (ADC), appeal the dismissal of their 42 U.S.C. Sec. 1983 complaint alleging that the ADC's "committed name policy" violates their rights to the free exercise of religion under the First Amendment. We vacate the judgment of the trial court and remand.
 
 
 2
 Appellants entered the Tucker Maximum Security Unit of the ADC under the names Kevin Robinson and Willie Blevins. They later underwent a conversion to the Muslim religion and changed their legal names to Bilal Ali Salaam and Khalil Al-Baaqee Saleem Abdullah in the Chancery Court of Jefferson County, Arkansas. Although the court's order decreed that the inmates "hereafter ... shall be known and designated for all purposes, legal and otherwise" by their new Muslim names, the committed name policy of the ADC requires all records to be maintained according to the name under which each inmate entered the prison.
 
 
 3
 In April 1986 the two inmates filed a pro se complaint under Sec. 1983, alleging that the ADC was abridging their free exercise rights by (1) keeping all institutional records in their committed names, (2) refusing to allow them to have their Muslim names on their clothing, and (3) requiring that all mail include their committed names. Appellants also asserted that they were being harassed by prison officials as a result of their name changes. The complaint stated that "Plaintiffs find their previous names religiously offensive because they consider them a sign or mark of a spiritually unenlightened state which they have transcended." Plaintiffs sought injunctive relief and damages. The magistrate denied their request for appointment of trial counsel.
 
 
 4
 All parties consented to magistrate jurisdiction. After an evidentiary hearing, the magistrate issued a five-page memorandum and order in December 1986 rejecting the inmates' complaint and upholding the ADC committed name policy. He found that the policy, specifically as carried out in the record-keeping, name tag, and mail room procedures, does not impair appellants' free exercise rights, and even if it does have a detrimental impact, the policy in each case is justified by the state's compelling interest in matters of identification and security. The magistrate also found that the plaintiffs' claims of harassment were unspecific and unsubstantiated.
 
 
 5
 The inmates appealed the decision of the magistrate to this Court, and we appointed counsel for purposes of the appeal. Appellants argue that the trial court erred by (1) concluding that their First Amendment rights were not violated, (2) excluding their witnesses from the trial, and (3) denying their motion for appointment of trial counsel.
 
 
 6
 A convicted criminal does not completely shed his First Amendment rights when he dons prison garb. But it is equally obvious that the fact of confinement often means that an inmate may not be able to exercise certain First Amendment rights as freely as he might have outside the prison walls. "In sum, there must be [a] mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Hill v. Blackwell, 774 F.2d 338, 340 (8th Cir.1985) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 336 (1974)). In evaluating a district court's determinations concerning the reasonableness of a prison regulation that impinges on a constitutional right, this Court's review of the ultimate legal conclusion is plenary. Hill, 774 F.2d at 343. We are keenly aware, however, that federal courts owe great deference to the expertise of the officials who perform the always difficult and often thankless task of running a prison. See, e.g., Hill, 774 F.2d at 341.
 
 
 7
 In 1987--after the decision of the magistrate in this case--the Supreme Court issued its opinion in Turner v. Safley, --- U.S. ----, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In Turner, the Court articulated the new standard for balancing prisoners' rights with prison rules. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. 107 S.Ct. at 2261. In applying the "reasonable relationship" standard, the Supreme Court considered four criteria: (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison staff; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest. Id. at 2262.
 
 
 8
 In the present case, the magistrate's ruling was made without the benefit of the later-published Turner decision. Turner provides a helpful analytical framework, and its fourth criterion--"the existence of obvious, easy alternatives" to the regulation, 107 S.Ct. at 2262--may have an important bearing on this case. Appellants have discussed in briefs and at oral argument before this Court a compromise proposal whereby the ADC would alter its committed name policy by adding an "also known as" (a/k/a) designation to the records of each inmate who changed his name for religious reasons during incarceration. Thus, instead of deleting the committed names from the records and uniforms and replacing them with new names as appellants originally demanded, the prison instead would add the new names as a/k/a's to the current files and name tags.
 
 
 9
 The complaint in this case does not mention the a/k/a designation as a possible alternative remedy. As the memorandum and order of the magistrate likewise does not discuss the a/k/a alternative, we assume that the plaintiffs did not raise this proposal at trial. Such an oversight is usually held to preclude appellate review. See, e.g., Johanson v. Pung, 795 F.2d 48, 49 (8th Cir.1986). We do not find a procedural bar here, however, because appellants initiated and litigated this suit without the aid of counsel, and because of the significance of the intervening decision of the Supreme Court in Turner. See, e.g., Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir.1985) (pro se pleadings are entitled to "indulgence" by the court).
 
 
 10
 The a/k/a designation has been recognized by several federal courts as a reasonable alternative to prisons' committed name policies. See Felix v. Rolan, 833 F.2d 517, 519 (5th Cir.1987) ("The 'a/k/a' designation [sic] for the receipt of privileges and record keeping is a reasonable middle ground between absolute recognition of the plaintiff's Muslim name and the prison interests of order, security and administrative efficiency.") (quoting Azeez v. Fairman, 604 F.Supp. 357, 364 (C.D.Ill.1985)); Barrett v. Virginia, 689 F.2d 498, 502 (4th Cir.1982) (same). See also Mujihadeen v. Compton, 627 F.Supp. 356, 357 (W.D.Tenn.1985) (upholding prison policy requiring both committed and Muslim name to appear on inmate I.D. card).
 
 
 11
 All parties in the case before us have consistently used a/k/a designations to refer to appellants by both their old and new names. It may be that the a/k/a designation is the sort of "obvious, easy alternative" which the Supreme Court specifically has directed the courts to examine under the fourth prong of the Turner criteria. Because the magistrate did not have before him either the new Turner formula or, presumably, the a/k/a alternative now offered by appellants, we remand this case to the District Court with instructions to review the ADC's committed name policy in light of the four Turner criteria and the a/k/a proposal.[1] In remanding, we express no opinion as to the merits of this matter.
 
 
 12
 On remand, the ADC's committed name policy should not be subjected to a higher standard of scrutiny merely because appellants have proposed an alternative procedure. See O'Lone v. Estate of Shabazz, --- U.S. ----, 107 S.Ct. 2400, 2405 n. **, 96 L.Ed.2d 282 (1987). But the ADC should respond to appellants' proposal, and the court then should determine whether the ADC's response is reasonable. Guidance will be found in O'Lone as well as in Turner. In O'Lone, the Supreme Court applied the Turner criteria in rejecting several alternatives proposed by Muslim inmates to the prison's work regulations, which required the Muslim inmates to miss their Friday period of worship. Considering the fourth criterion under Turner, the Court stated: "As noted by the District Court, however, each of [the inmates'] suggested accommodations would, in the judgment of the prison officials, have adverse effects on the institution." Id. 107 S.Ct. at 2406. See also Turner, 107 S.Ct. at 2263-64 (Court affirmed trial court's rejection of inmates' alternative mail proposal because prison officials had testified that alternative would be costly in terms of resources and security).
 
 
 13
 The ADC argues that the state never is required to take affirmative steps to accommodate an inmate's free exercise rights. See, e.g., Barrett, 689 F.2d at 503. Although Turner and O'Lone do not specifically address this question, the general thrust of these opinions appears to run counter to the broad proposition that a prison never may be required to take affirmative steps to accommodate the constitutional rights of prisoners if such an accommodation can be achieved at de minimis cost to valid state interests.
 
 
 14
 While we agree with the general notion that the state is not usually required to take affirmative steps to accommodate the free exercise of religion, it is also true that prisons routinely do take affirmative steps, if small ones, to accommodate inmates' religious needs. See, e.g., Otey v. Best, 680 F.2d 1231, 1232 (8th Cir.1982) (Muslim inmate was "provided with special meals during the holy month of Ramadan, requested religious literature, and national Muslim broadcasts"); Jones v. Wittenburg, 509 F.Supp. 653, 697 (N.D.Ohio 1980) ("Bibles and crosses are available to the clergy and are distributed to those inmates requesting them during Sunday service."); Masjid Muhammad-D.D.C., 479 F.Supp. at 1321 ("[T]hree Courts of Appeal[2] ... [have] held that prison officials must recognize a Muslim inmate's right to refrain from eating pork and must provide him with sufficient amounts of non-pork food to constitute a nutritious diet."). See also O'Lone, 107 S.Ct. at 2406 (Muslim prisoners provided with clergyman and special diets by the state). Whether the Constitution requires the ADC to alter its "committed name policy" to accommodate appellants' free exercise rights is a question to be answered by the District Court in light of Turner and O'Lone and the record that will be developed on remand.
 
 
 15
 Finally, appellants contend that the magistrate abused his discretion by excluding their three witnesses from the trial. We disagree. Two of these witnesses were fellow inmates who, according to a witness list prepared by plaintiffs, were to testify "to the facts of [their] constitutional rights that [have] been violated by the defendant." The magistrate properly ruled that such testimony would be cumulative of plaintiffs' own testimony. The third witness was, plaintiffs said, an expert who would testify "to the facts, of the Muslim faith and the principl[es] of (Islam) and the changing of the names." As the ADC did not contest the sincerity of the plaintiffs' religious beliefs, and argued that any impairment of constitutional rights was justified by institutional needs, we hold that the magistrate did not abuse his discretion in excluding this testimony.
 
 
 16
 Because we are remanding the case for further proceedings, we need not, and do not, consider the merits of appellants' contention that the magistrate abused his discretion in denying their request for appointment of trial counsel. We do not, of course, decide whether appellants should be afforded counsel on remand; they are free to file a request with the District Court for the appointment of counsel to represent them in the proceedings on remand.
 
 
 17
 The order of the magistrate is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Several further observations may be helpful. First, prisons generally should be able to organize and maintain their administrative records in whatever fashion they choose. See Barrett, 689 F.2d at 502; Akbar v. Canney, 634 F.2d 339, 340 (6th Cir.1980), cert. denied, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981); Azeez, 604 F.Supp. at 363. Second, the specific issue of whether prisons must permit religious converts to wear their new names on their uniforms appears to be a question of first impression. Third, there are decisions recognizing that inmates who change their names for religious reasons have a constitutional right to receive mail under their new names. See Barrett, 689 F.2d at 503 ("it would be unlawful for Virginia to refuse to deliver mail addressed to a prisoner under his legal religious name"); Masjid Muhammad-D.D.C. v. Keve, 479 F.Supp. 1311, 1328 (D.Del.1979) (inmates who converted to Islam "have established their right to have mail addressed to them solely in their Muslim names delivered as any other mail"); see also Akbar, 634 F.2d at 340 (dicta) (prison officials may not deny benefits because inmate uses his new Muslim name); Azeez, 604 F.Supp. at 364 (same)
 
 
 [2]
 Ross v. Blackledge, 477 F.2d 616 (4th Cir.1973); Barnett v. Rodgers, 410 F.2d 995 (D.C.Cir.1969); United States v. Kahane, 396 F.Supp. 687 (E.D.N.Y.) aff'd sub nom. Kahane v. Carlson, 527 F.2d 492 (2d Cir.1975)