**BRAUN INC. and Braun Aktiengesellschaft, Plaintiffs/Cross–Appellants,**

v.

**DYNAMICS CORPORATION OF AMERICA, Defendant–Appellant.**

Nos. 91–1329, 91–1363.

United States Court of Appeals, Federal Circuit.

Sept. 8, 1992.

Suggestion for Rehearing In Banc Declined Oct. 7, 1992.

Steven E. Lipman, Fish & Richardson, Washington, D.C., argued for plaintiffs/cross-appellants. With him on the brief was Heidi E. Harvey, Fish & Richardson, of Boston, Mass.

Harry C. Marcus, Morgan & Finnegan, New York City, argued for defendant-appellant. With him on the brief were Thomas P. Dowling and Mark J. Abate, of counsel.

Before: RICH and PLAGER, Circuit Judges, and COHN, District Judge.*

COHN, District Judge.

## I. Introduction

This is, among other things, a design patent infringement case. Plaintiffs/cross-appellants, Braun, Inc., and Braun Aktiengesellschaft (Braun), are the owners of U.S. design patent No. 271,176, which relates to a hand held electric blender. Defendant-appellant, Dynamics Corporation of America's Waring Products Division (Waring), manufactures a competing hand held electric blender. On February 1, 1988, Braun sued Waring in the United States District Court for the District of Connecticut, alleging: (1) design patent infringement, 35 U.S.C. § 271, (2) false designation of origin, including trade dress infringement, pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and (3) unfair competition and passing off under Connecticut common law and statutory law.

In December 1990, the case was tried before a jury. At the close of evidence the district court directed a verdict against Waring's defense that Braun committed inequitable conduct before the United States Patent and Trademark Office (PTO). The district court reasoned there was insuffi-cient evidence of intent to deceive the PTO to go to the jury. On December 19, 1990, the jury found that: (1) Braun's design patent was valid, (2) Waring willfully infringed Braun's design patent,[1] (3) Waring infringed Braun's trade dress in the design of its blender, and (4) Waring infringed Braun's trade dress in the packaging of its blender, (5) Waring "passed off" its blender as Braun's blender, and (6) Waring's total profit from the sale of its blender was $737,948.[2]

On April 26, 1991, the district court: (1) denied Waring's motions for judgment notwithstanding the verdict (JNOV) or for a new trial, Fed.R.Civ.P. 50(b),[3] (2) awarded Braun three times Waring's total profit on the grounds that Waring willfully infringed Braun's design patent, pursuant to 35 U.S.C. § 284, and (3) denied Braun's motion for attorney fees and costs.

Now Waring and Braun appeal. Waring says: (1) the jury's verdict as to design patent infringement must be reversed as it is unsupported by substantial evidence, (2) the jury's verdict as to the willfulness of Waring's infringement must be reversed as it is unsupported by substantial evidence, (3) the district court erred in trebling Waring's profits, (4) the district court erred by directing a verdict as to Waring's affirmative defense of inequitable conduct, (5) the jury's verdict that Waring infringed Braun's trade dress in the design of its blender must be reversed as it is unsupported by substantial evidence, (6) the jury's verdict that Waring infringed Braun's trade dress in the packaging of its blender must be reversed as it is unsupported by substantial evidence, and (7) the jury's verdict that Waring passed off its blender as Braun's blender must be re-

---

* Honorable Avern Cohn, District Judge for the Eastern District of Michigan, sitting by designation.

1. See Exhibit A, Figs. 1 and 2 of patent No. 271,176, and Exhibit B, a drawing of Waring's blender.

2. By stipulation, the amount of profit was increased to $1,053,524 to take into account sales for the period between October 1, 1990, and the date of judgment.

3. Effective December 1, 1991, Fed.R.Civ.P. 50(b) was amended to eliminate the term "Motion for Judgment Notwithstanding the Verdict" and to substitute it with "Renewal of Motion for Judgment After Trial." In all substantive respects the amended version of Fed.R.Civ.P. 50(b) has the same effect as the former rule.

versed as it is unsupported by substantial evidence. In its appeal, Braun says the district court erred in denying it attorney fees.

 For the reasons which follow, we AFFIRM in part and REVERSE in part the judgment of the district court. In particular, we: (1) AFFIRM the jury's verdict as to design patent infringement, (2) REVERSE the jury's verdict as to the willfulness of Waring's design patent infringement, (3) REVERSE the district court's trebling of Waring's total profits, (4) AFFIRM the district court's directed verdict as to Braun's alleged inequitable conduct, (5) REVERSE the jury's verdict as to both trade dress infringement of blender design and packaging and REMAND as to blender design, (6) REVERSE and REMAND in part the jury's verdict as to passing off, and (7) AFFIRM the district court's denial of attorney fees.[4] In so holding, we have looked to essentially three separate sources of law. In deciding the question of design patent infringement, and all related issues, we have applied case law of the Court of Appeals for the Federal Circuit, which has exclusive jurisdiction over patent appeals. 28 U.S.C. § 1295. In deciding the claims involving trade mark and trade dress infringement brought under section 43(a) of the Lanham Act, we have looked to the case law of the Court of Appeals for the Second Circuit, which is where this case was tried. *See Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 909 (Fed.Cir. 1984) (in reviewing pendent trademark claims, the Federal Circuit applies the law of the circuit in which the case was tried).[5]

Lastly, because this case was tried in Connecticut and Waring's principal place of business is in Connecticut, we have applied Connecticut law in deciding Braun's state law claims of "passing off."

## II. Design Patent Infringement

### A.

 The issue of patent infringement is one of fact to be proven by a preponderance of the evidence. *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986). "[W]e review the sufficiency of the evidence underlying a jury verdict on an issue of fact to determine whether the jury's decision was supported by substantial evidence." *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed.Cir.1991) (citing *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed.Cir.1989)). Thus, the jury's finding of infringement must be upheld if it is supported by substantial evidence.[6]

### B.

 In determining questions of infringement, the district court must instruct the jury to follow the standard articulated in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872):

[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it.

---

4. Technically, we are reviewing the district court's disposition of Waring's JNOV motion, not the jury's determinations as to patent infringement, willfulness, trade dress infringement and passing off. But this is a distinction without a difference. Our review of a denial of the JNOV motion requires us to determine whether the jury's factual determinations are supported by substantial evidence. *Modine Manufacturing Co. v. Allen Group., Inc.*, 917 F.2d 538, 541 (Fed.Cir.1990); R. Harmon, *Patents and the Federal Circuit*, § 15.1(b)(ii) (1991). The denial of a JNOV motion is a question of law subject to *de novo* review. *Pinnacle Port Community Association, Inc. v. Orenstein*, 952 F.2d 375, 378 (11th Cir.1992).

5. As will be seen, *infra*, the law in the Second Circuit as to trade dress infringement has been modified by the Supreme Court's decision in *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615, 23 USPQ2d 1081 (1992).

6. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 859 (Fed.Cir. 1991) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

to be the other, the first one patented is infringed by the other.[7]

*Lund Industries, Inc. v. Go Industries, Inc.*, 938 F.2d 1273, 1276 (Fed.Cir.1991). In evaluating a claim of design patent infringement, a trier of fact must consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design. *In re Salmon*, 705 F.2d 1579, 1582 (Fed.Cir.1983) (a "design is a unitary thing and all its portions are material"). Also, patent infringement can be found for a design that is not identical to the patented design. *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1190 (Fed. Cir.1988). Design patent infringement does not concern itself with the broad issue of consumer behavior in the marketplace. *See Unette Corp. v. Unit Pack Co. Inc.*, 785 F.2d 1026, 1029 (Fed.Cir.1986) (likelihood of purchasers' confusion as to the source of goods is not a necessary factor for determining design patent infringement; the holder of a valid design patent need not have progressed to the manufacture and distribution of a "purchasable" product).

### C.

■ Applying these standards, there is clearly substantial evidence to support the jury's finding of infringement. In arguing that the jury erroneously determined that it infringed Braun's design patent, Waring relies on certain differences between its design and Braun's design. However, examination of Braun's and Waring's respective designs, in addition to the blenders themselves, tells us a jury could reasonably find they are, when viewed as a whole and

compared to pre-existing hand held blenders, similar.[8] For instance, in contrast to pre-existing hand held blenders, which had a utilitarian, mechanical appearance, both Waring's blender and Braun's blender share a fluid, ornamental, aerodynamic overall design. The shafts of both blenders are encased in a housing that gradually tapers away from the motor housing. The top portion of each blender, when viewed from the front, is tapered at the top to integrate the handle into the motor housing. The shaft housing of each blender gradually expands to form a blade housing, which is punctured by four elongated, essentially rectangular ports.

The jury could also reasonably find that the only readily noticeable difference between Braun's blender and Waring's blender is that the former has a handgrip indentation while the latter does not. However, at trial, Braun's former product manager, Alex Campbell, testified consumers typically purchase hand held electric buyers on an "impulse"[9] and as a result they may not differentiate Waring and Braun's designs, despite this and other dissimilarities. Thus, Waring has not convinced us that the jury's finding of infringement was not supported by substantial evidence. In light of evidence of record, the jury could have reasonably concluded that Waring's blender meets the *Gorham* test of similarity in ornamental appearance such that an ordinary observer would be likely to purchase one blender thinking it was the other. Thus, under these circumstances, where no exception was taken to the jury instructions as to the issue of design patent

---

7. *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984), supplements the above test with the requirement that "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." This prong of the design patent infringement test is irrelevant as Waring has not disputed that, assuming the *Gorham* standard for infringement has been met, its blender adopts the novel aspects of Braun's design.

In addition, "where a design is composed of functional, as well as ornamental features, a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental." *Read Corp. v.*

*Portec, Inc.*, 970 F.2d 816, at 825 (Fed.Cir.1992). This issue is not present in this appeal.

8. When, as here, "no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices." *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1189 (Fed.Cir.1988).

9. Campbell stated that people buy products impulsively if they are relatively inexpensive. Hand held electric blenders sell for approximately $25.

infringement[10] and there was substantial evidence offered to permit a finding of infringement, we must defer to the jury's verdict that Waring infringed Braun's design patent. *Sanders v. Parker Drilling Co.*, 911 F.2d 191, 194 (9th Cir.1990) (jury's verdict must stand, when there is sufficient evidence before the jury on particular issue, and if instructions of law were correct); *United States v. White*, 932 F.2d 588, 590 (6th Cir.1991) (a "verdict rendered by a properly instructed jury is deserving of considerable deference on appeal").

### D.

In support of its argument that the jury's finding of infringement was not supported by substantial evidence, Waring says that the only evidence of record as to the issue of design patent infringement is: (1) the patent's design, and (2) the blenders themselves. Waring says that, in the absence of additional evidence that the blenders' designs would deceive ordinary observers, such as a statistical survey or other empirical data, a jury cannot as a matter of law find design patent infringement.

█ Review of the record before us does not show that Waring at any time raised this issue before the district court.[11] We generally will not consider issues that were not presented in the district court. *See CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1009 (Fed.Cir.1985); *Rebaldo v. Cuomo*, 749 F.2d 133, 137 (2d Cir.1984). Thus, Waring cannot, at the eleventh hour, raise the issue for the first time on appeal.[12]

█ Nothing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design. It is true that in *Gorham*, 81 U.S. at 530, the U.S. Supreme Court found design patent infringement and in doing so relied in part on empirical and testimonial evidence that ordinary observers would be likely to mistake one product for another. However, in *Gorham*, the Supreme Court did not state, or suggest, that a panel of jurors was anything other than a panel of ordinary observers capable of making a factual determination as to whether they would be deceived by an accused device's design similarity to a patented design. Simply put, a jury, comprised of a sampling of ordinary observers, does not necessarily require empirical evidence as to whether ordinary observers would be deceived by an accused device's design. The desirability of or necessity for presentation of such evidence might vary depending on the circumstances of a particular case; since Waring did not consider the circumstances of this case significant enough to raise the requirement for such evidence at the trial level, we need not consider the issue here.[13] In sum, we

---

**10.** The district court instructed the jury as follows:

A design infringes a patented design if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same such that the resemblance would deceive an ordinary observer, inducing him or her to purchase the alleged infringement supposing it to be a device covered by the patent. In addition to the overall similarity of designs, the device accused of infringing must appropriate the novelty of the patented design which distinguishes it from the prior art.

**11.** On December 12, 1990, Waring moved for a directed verdict as to all of Braun's claims. The district court denied the motion. In arguing the merits of the motion, Waring did not, explicitly or implicitly, address whether Braun's failure to offer empirical evidence or expert testimony that ordinary observers would be deceived by

Waring's blender precluded a finding of design patent infringement. *See* Trial transcript, Dec. 12, 1990, pp. 66–76.

**12.** While some circuits have held that the bar to raising a new issue on appeal is not absolute, it may be overcome only when necessary to avoid manifest injustice. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir.1990). In view of Waring's unexplained failure to raise the issue before the district court, we see no reason to depart from the general rule that issues may not be raised for the first time on appeal.

**13.** In arguing that the jury's finding of infringement is not supported by substantial evidence, Waring also: (1) asserts legal error in the jury instructions as to design patent infringement, and (2) says Braun's closing argument improperly emphasized the similarities of the designs'

affirm the holding that Waring infringed the design patent.

## III. Inequitable Conduct

■■■ At trial, Waring asserted the affirmative defense that Braun's design patent was unenforceable because of inequitable conduct before the PTO. In short, Waring says Braun committed inequitable conduct because it failed to present its own material prior art to the PTO. Waring says the prior art is material because it suggests that Braun's blender design was merely an obvious evolutionary step, not a patentable advance, in the art. The district court properly granted a directed verdict as to the defense of inequitable conduct. To be guilty of inequitable conduct, an applicant must have intended to deceive the PTO by failing to disclose material information. *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987). Both of these elements, intent and materiality, must be proven by clear and convincing evidence. *J.P. Stevens & Co., Inc v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559 (Fed.Cir. 1984).

■■■ Waring says Braun's intent to deceive may be inferred solely from its failure to present to the PTO material prior art of which it was aware. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989) (intent may be found as a matter of inference). "However, materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 552 (Fed.Cir.1990) (citing *Allen Organ Co. v. Kimball International, Inc.*, 839 F.2d 1556, 1567 (Fed.Cir.1988)). Thus, in attempting to prove inequitable conduct, Waring could not rely solely on the materiality of Braun's prior art.

Waring failed to prove the element of intent by clear and convincing evidence.

Waring did not depose or call as witnesses any of the individuals who participated, directly or indirectly, in the prosecution of the design patent application before the PTO. In fact, Waring did not present the testimony of a single person who had any knowledge of the prosecution of the design patent application. Given both the dearth of evidence as to the element of intent and the applicable clear and convincing evidentiary standard, we see no error in the district court's directed verdict.

## IV. Trebling Waring's Total Profits

There are two separate reasons why the district court erred in awarding Braun three times Waring's total profit.

### A.

■■■ First, the district court's award of treble damages was based on the jury's erroneous determination that Waring willfully infringed Braun's design patent. Whether infringement is willful is a question of fact, *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1015 (Fed.Cir.1985), and the jury's determination as to willfulness is therefore reviewable under the substantial evidence standard. *Jurgens*, 927 F.2d at 1557. Willfulness is determined from the totality of the circumstances, *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed.Cir.1985), and must be proven by clear and convincing evidence, *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1440 (Fed.Cir.1988). On-going consultation with a patent lawyer is highly probative evidence of good faith. *Radio Steel & Manufacturing Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1559 (Fed.Cir.1986).

We must determine whether there is substantial evidence, when viewed as a whole, upon which a jury could determine under the clear and convincing evidence standard

---

lower portions while failing to consider the designs as a whole. These arguments lack merit. First, in paraphrasing the standards articulated in *Gorham,* the district court properly instructed the jury as to design patent infringement. *See supra* n. 6. In any event, Waring did not object to any of the jury instructions. *Finch v.*

*Hughes Aircraft Co.,* 926 F.2d 1574, 1576–77 (Fed.Cir.1991) (legal error may not be raised for the first time on appeal). Second, in its closing argument Braun referred to the overall similarity of the designs as well as their differences; it did not merely emphasize their lower portions. *See* Trial transcript, Dec. 17, 1990, pp. 16–17.

that Waring willfully infringed Braun's patent. We find insufficient evidence upon which the jury could rely.

### 1.

■ In arguing that Waring willfully infringed its design, Braun relies largely on evidence taken out of context and speculative inferences based on that evidence. For instance, Braun says Waring withheld "crucial" facts from its own patent lawyer, Daniel Sixbey (Sixbey), by not honoring his request, as stated in the letter dated March 17, 1987, for a view of the Waring blender's "outside configuration." However, Braun's contention that Waring concealed relevant information from Sixbey is inconsistent with the undisputed fact that Waring, among other things, sent him: (1) a complete blueprint of its blender's final design, (2) a photograph of the blender's final design, and (3) a pre-production prototype of the blender.

Braun also says that Waring did not in fact rely on Sixbey's letter, dated March 17, 1987, and merely created a paper trail to suggest such reliance. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1577 (Fed.Cir.1983) (willfulness finding affirmed where there was "no support for [appellant's] assertion of reliance in the record"). In support of this assertion, Braun says Waring authorized the production of the blender on March 16, 1987, before it received Sixbey's letter, dated March 17, 1987. However, the letter, when read in its entirety, suggests that Sixbey had previously stated that a proposed design, which contained *fewer* distinguishing features than the blender's final design, did *not* infringe Braun's design.

Lastly, in arguing that Waring willfully infringed its design patent, Braun relies heavily on Sixbey's letter, dated November 20, 1987, to Braun, which forwarded a "pre-production prototype" that "accurately illustrates the design proposed for the subsequent commercial models." Braun says this letter deliberately misled Braun as to Waring's marketing plans, because it implies that the blender was still in development when, in fact, prior to Sixbey's letter, 1500 commercial units were "in the air" for delivery from Europe to various retailers in the United States. Waring's conduct at this time is hardly probative evidence of willful infringement, because, as stated *supra,* Waring received noninfringement opinions long before the units were shipped to the United States.

### 2.

There is ample undisputed evidence that Waring's conduct reflected due care and good faith to avoid infringement. In particular: (1) before learning of Braun's patent, Waring hired an independent design firm to create a distinctive design for its blender, (2) Waring's patent lawyer, Sixbey, was fully involved as a consultant during all stages of the design process, *Rexnord, Inc. v. Laitram Corp.,* 6 USPQ2d 1817, 1846, 1988 WL 141526 (E.D.Wis.1988) (no willfulness where a patent lawyer was consulted during the design process), (3) Sixbey discovered Braun's patent through a search conducted at Waring's request, *Studiengesellschaft Kohle v. Dart Industries, Inc.,* 666 F.Supp. 674, 689 (D.Del.1987) (discovery of patent through own diligence is a factor suggesting reasonableness, not willfulness), (4) Waring rejected a particular design because it "look[ed] too much like Braun," (5) Waring received advice in the form of a letter, dated March 17, 1987, from Sixbey, which strongly suggested that its final design did not infringe Braun's design, and (6) Waring received an opinion in the form of a letter, dated July 29, 1987, from Sixbey which stated in extensive detail that its design did not infringe Braun's design, *See 3M Corp. v. Research Medical Corp.,* 679 F.Supp. 1037, 1064–65 (no willfulness where initial legal opinion is followed by later extensive opinion). In light of this evidence, the jury's determination of willful infringement was not supported by substantial evidence.

### B.

■ Assuming *arguendo* that there is substantial evidence that Waring willfully infringed Braun's design, the district court nevertheless erroneously awarded Braun

three times Waring's total profit.[14] Braun elected to recover Waring's total profits under 35 U.S.C. § 289,[15] not 35 U.S.C. § 284, which provides that a patentee may recover "damages adequate to compensate for the infringement" which "the court may increase ... up to three times."[16] Nothing in 35 U.S.C. § 289 authorizes an increase in a patentee's total profit. In fact, 35 U.S.C. § 289 explicitly precludes a patentee from "twice recover[ing] the profits made from the infringement." *See Bergstrom v. Sears, Roebuck and Co.*, 496 F.Supp. 476, 496 (D.Minn.1980) ("the purpose of this latter phrase is to insure that a patentee not recover both the profit of an infringer and some additional damage remedy from the same infringer, such as reasonable royalty"). As a result, by trebling Waring's total profit, the district court clearly exceeded its statutory authority.[17]

In trebling Waring's total profits, the district court implicitly reasoned: (1) there is little, if any, substantive difference between damages under 35 U.S.C. § 284 and profits under 35 U.S.C. § 289, and (2) as a result, it may increase profits as well as damages. However, this analysis ignores the longstanding distinction in patent law between damages and profits. In sum, recovery of compensatory damages for infringement evolved in courts of law and could be increased, but recovery of an infringer's profits evolved in courts of equity and could not be increased. *Birdsall v. Coolidge*, 93 U.S. (3 Otto) 64, 68–70, 23 L.Ed. 802 (1876); *New England Fibre Blanket Co. v. Portland Telegram*, 61 F.2d 648, 650 (9th Cir.1932). *See generally* D. Chisum, *Patents* § 20.02[1][d] (1991); *Georgia Pacific Corp. v. United States Plywood Corp.*, 243 F.Supp. 500, 518 (S.D.N.Y.1965) (the Patent Act of 1870, *reprinted in* D. Chisum, 6 *Patents* app. 14 (1991), drew a "sharp cleavage" between profits and damages). For instance, although a utility patentee could recover an infringer's profit prior to 1946, just as a design patentee may do so today, courts uniformly held that the infringer's profit could not be increased. *Amusement Corp. v. Mattson*, 138 F.2d 693, 697 (5th Cir. 1943); *Sutton v. Gulf Smokeless Coal Co.*, 77 F.2d 439, 442 (4th Cir.1935); *New England Fibre*, 61 F.2d at 651; *Yesbera v. Hardesty Manufacturing Co.*, 166 F. 120, 128 (6th Cir.1908). In *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505, 84 S.Ct. 1526, 1542, 12 L.Ed.2d 457 (1964), the Supreme Court further distinguished damages from profits by explicitly holding that only damages were recoverable under 35 U.S.C. § 284.

---

**14.** The district court awarded Braun $3,213,239 by trebling the total profit realized by Waring from sale of its blenders and prejudgment interest.

**15.** Section 289 provides, in relevant part:

**Section 289. Additional remedy for infringement of design patent**

Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit....

Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

**16.** A "design patentee cannot recover both damages under 35 U.S.C. § 284 and the profits of the infringer under 35 U.S.C. § 289." *Bergstrom,* 496 F.Supp. 476, 494 (D.Minn.1980) (citing *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635 (5th Cir.1959)).

**17.** The district court erroneously concluded that the treble damage provision of 35 U.S.C. § 284 also applies to "profits" awarded under 35 U.S.C. § 289. However, there is simply no authority to support this assertion. The "profits recoverable under Section 289 do not constitute 'damages' that may be increased up to three times under Section 284." D. Chisum, 5 *Patents* § 20.03[5]. In holding that a patentee who recovers an infringer's profits under 35 U.S.C. § 289 may receive an "enhanced" award where appropriate, the district court relied solely on *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635 (5th Cir. 1959). This case is wholly inapposite as it apparently involved a patentee who, unlike Braun, rejected relief under 35 U.S.C. § 289 in favor of damages under 35 U.S.C. § 284. In *Henry Hanger,* 270 F.2d at 644, the infringer's profit was involved only indirectly, as evidence of the patentee's damages under 35 U.S.C. § 284.

## V. Trade Dress

 As stated *supra*, the jury found that: (1) Waring's blender design infringed Braun's blender trade dress, and (2) Waring's carton design infringed Braun's packaging trade dress. Under prior Second Circuit law, to prevail on a trade dress claim, under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff was, in all circumstances, required to demonstrate that: (1) the product's appearance had acquired "secondary meaning," namely that the consuming public identified the product with its maker, and (2) purchasers were likely to confuse the imitating goods with the originals. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir.1991); *Litton Systems*, 728 F.2d at 1444–45. However, while this case was pending on appeal the Supreme Court held that "proof of secondary meaning is not required to prevail on a claim under § 43(a) of the Lanham Act where the trade dress at issue is inherently distinctive." *Two Pesos, Inc. v. Taco Cabana*, —— U.S. ——, ——, 112 S.Ct. 2753, 2761, 23 USPQ2d 1081, 1086, 120 L.Ed.2d 615 (1992). Thus, if the trade dress at issue is inherently distinctive,[18] the plaintiff need only show that purchasers are likely to confuse it with the allegedly imitating goods. *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702–03 (5th Cir.1981).[19]

 The jury's determination of secondary meaning is one of fact, *Malcolm Nicol & Co. v. Witco Corp.*, 881 F.2d 1063, 1065 n. 4 (Fed.Cir.1989), and therefore warrants a substantial evidence standard of review. *Jurgens*, 927 F.2d at 1557. The determination of likelihood of confusion, however, is the ultimate conclusion of law to be decided by the court and, as a result, a *de novo* standard of review is applicable. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569 (Fed.Cir.1983).[20] Applying these standards, the jury's determination of trade dress infringement, as to both Braun's design and packaging, constitutes reversible error.

### A.

#### 1.

 Although, as discussed *infra*, there is no probative evidence that Braun's blender design had, at the time of Waring's infringement, acquired secondary meaning, the issue of trade dress infringement as to the blender design must be remanded to the district court in light of the Supreme Court's intervening decision in *Two Pesos*. As stated *supra*, in *Two Pesos*, the Supreme Court held that a plaintiff need not prove secondary meaning to prevail on a trade dress infringement claim if the trade dress is inherently distinctive. Here, because prior Second Circuit law required proof of secondary meaning as to all trade dress infringement claims, Braun had no reason to show that its trade dress as to the blender design was inherently distinc-

---

**18.** Trade marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by the late Judge Henry Friendly, they may be: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *See Abercrombie & Fitch C. v. Hunting World, Inc.*, 537 U.S. 4, 9 (2d Cir.1976). The latter three categories of marks are deemed inherently distinctive. *Two Pesos*, —— U.S. at ——, 112 S.Ct. at 2757, 23 USPQ2d at 1083. In *Two Pesos*, —— U.S. at ——, 112 S.Ct. at 2760, 23 USPQ2d at 1085, the Supreme Court adopted the *Abercrombie* formulation as the means of determining whether a trade dress is inherently distinctive. Thus, a trade dress is inherently distinctive if it is suggestive, arbitrary or fanciful or, in other words, if it is brand identifying, that is if "it is capable of identifying products or services as coming from a specific source." *Id.*

**19.** In *Chevron*, 659 F.2d at 702, the Court of Appeals for the Fifth Circuit stated that if a trade dress is inherently distinctive, then showing secondary meaning is superfluous:

If the features of the trade dress sought to be protected are arbitrary and serve no function either to describe the product or assist in its effective packaging, there is no reason to require a plaintiff to show consumer connotations associated with such arbitrarily selected features.

**20.** Similarly, the Court of Appeals for the Second Circuit has held that the ultimate determination of likelihood of confusion is a legal conclusion reviewable *de novo*. *Murphy v. Provident Mutual Life Insurance, Co.*, 923 F.2d 923, 928 (2d Cir.1990).

tive.[21] Thus, because Braun and Waring's blender designs may be confusingly similar, the issue of trade dress as to Braun's blender design must be remanded so that the district court can address the issue of inherent distinctiveness in line with *Two Pesos. See generally Salaam v. Lockhart*, 856 F.2d 1120, 1123 (8th Cir.1988) (remand of 42 U.S.C. § 1983 claim warranted when intervening decision by the Supreme Court alters applicable First Amendment law); *Smalls v. United States Environmental Protection Agency*, 861 F.2d 60 (3d Cir. 1988) (remand was required of Federal Tort Claims Act action when relevant Court of Appeals decision was reversed by the Supreme Court); *Alexander v. Whitley*, 940 F.2d 946, 948 (5th Cir.1991) (similar). If the blender designs are confusingly similar and Braun's blender design is found to be inherently distinctive, then Braun will prevail on its trade dress infringement claim.

### 2.

■ If on remand it is determined that Braun's blender design is not inherently distinctive, then Braun cannot prevail on the trade dress claim, because there is simply no probative evidence that the blender design had, at the time of Waring's infringement, acquired secondary meaning. Thus, the jury's implicit finding that Braun's blender design acquired secondary meaning was not supported by substantial evidence.

■ A claim of trade dress infringement fails if secondary meaning did not exist before the infringement began. *Saratoga Vichy Spring Co.*, 625 F.2d 1037, 1043 (2d Cir.1980). Braun began selling its blender in nine west coast test markets, including Seattle, San Francisco, Los Angeles, and Chicago in the spring of 1986 and December 1986, respectively. Waring and Braun both began selling their blenders nationally during the 1987 Christmas season. Braun must therefore show that its blender design acquired secondary meaning during the approximately 18 months preceding the introduction of Waring's blender.

■ At trial, Braun sought to demonstrate secondary meaning by introducing evidence that, during 1986 and 1987: (1) it advertised its blender on television and in newspapers,[22] *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1132, 1133 n. 4 (2d Cir.1979) (advertising expenditures evidence of secondary meaning), (2) its blender sold at a brisk pace in various test markets, *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 n. 1 (2d Cir.1981) (sales success evidence of secondary meaning), and (3) it received unsolicited media coverage of the blender in a trade journal, *id.* at 950 (unsolicited media attention evidence of secondary meaning). Demonstrating secondary meaning requires the satisfaction of rigorous evidentiary requirements. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985). Braun's limited evidence as to advertising, sales and media attention, standing alone, is not sufficient to demonstrate that the consuming public identified the blender design with its maker, Braun.

First, while not impossible, it is difficult for a product to acquire secondary meaning during an 18–month period. *Cicena, Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed.Cir.1990) (use of only 18 months is "evidence point[ing] strongly away from a finding of secondary meaning"); *Sunbeam Corp. v. Equity Industries*, 635 F.Supp. 625, 630 (E.D.Va. 1987) (same). Therefore, giving due deference to what the jury could have reasonably relied on as a basis for its determinations, the short period during which Braun's blender was on the market prior to the infringement is inconsistent with a finding of secondary meaning.

In addition, the fact that Braun spent an arguably large sum of money on advertising is of limited probative value. Braun

---

**21.** The district court did not instruct the jury as to the issue of inherent distinctiveness.

**22.** By Christmas 1987, Braun spent approximately $5.5 million advertising its blender. The record is unclear as to the amount of money it spent on advertising prior to the introduction of Waring's blender.

did not proffer evidence establishing that the advertising effectively created secondary meaning as to the blender. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir.1987) ("a large expenditure of money does not in itself create legally protectable rights. The test of secondary meaning is the effectiveness of the efforts to create it"); *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663 (2d Cir.1979) (mere presence of extensive advertising does not resolve issue of secondary meaning).[23]

Similarly, the fact that there was an apparently large consumer demand for Braun's blender does not permit a finding the public necessarily associated the blender design with Braun. *Cicena*, 900 F.2d at 1552 (strong market demand for a product usually indicates product desirability not secondary meaning). Furthermore, the fact that only a single trade journal published an article about Braun's blender does not add probative strength to Braun's argument.

Braun proffered no surveys, quantitative evidence or testimony suggesting the existence of secondary meaning as to the blender design. *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir.1987) (plaintiff's failure to submit survey evidence of secondary meaning supported finding that none existed); *Investacorp, Inc. v. Arabian Investment Banking Corp.*, 722 F.Supp. 719, 723–24 (S.D.Fla.1989) (plaintiff's failure to provide survey evidence is compelling evidence of no secondary meaning). In light of Braun's failure to offer

probative evidence showing secondary meaning, the jury's implicit finding that Braun's blender design acquired secondary meaning was based on speculation and not supported by substantial evidence. As a result, the jury's finding of trade dress infringement as to blender design must be reversed.

### B.

■ As stated *supra*, likelihood of confusion is a question of law, reviewed *de novo* on appeal. *Giant Food*, 710 F.2d at 1569. Thus, the Court may make an independent evaluation as to whether Waring and Braun's packaging is confusingly similar. We reject the jury's implicit finding that Braun established such likelihood of confusion, and therefore its finding of trade dress infringement as to the packaging must be reversed.[24]

Indeed, examination of Braun and Waring's respective packaging reveals they are, when viewed as a whole, not confusingly similar. Braun and Waring's packaging, that is their cartons, both show white blenders, positioned vertically, against a white background in conjunction with various food items.[25] However, in all other respects, the cartons share little, if any, similarities. Braun identifies its product as a "hand blender" in horizontal red letters directly below the brand name "Braun" and the product named "Multipractic" in plain black lettering. The name Braun also appears in stylized black lettering on the white background at the bottom of the carton. In contrast, Waring refers to its product by its registered trademark "Blendor" preceded by the words "Hand Held"

---

**23.** Moreover, the television commercial aired by Braun only showed the blender design briefly, that is at its beginning and end. Therefore, the commercial did arguably little to bestow primary source-identifying significance upon the blender design. *See First Brands*, 809 F.2d at 1383 (advertisement which failed to stress color and shape of antifreeze jug ineffective to engender consumer identification of source for secondary meaning).

**24.** In light of our holding that the jury erred in finding likelihood of confusion as to the blender's packaging, the issue of inherent distinctiveness is therefore moot. As stated *supra*, to

prevail on a trade dress infringement claim, even if the trade dress is inherently distinctive, a plaintiff must nevertheless establish likelihood of confusion.

**25.** In determining trade dress infringement, Waring and Braun's use of similar food props is irrelevant. The props illustrate the functional qualities of the blenders—to puree fruits and vegetables and blend drinks. Waring may as a matter of law use generic and descriptive matter on its packaging to inform the public of the nature and use of its product. *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 779–80 (2d Cir.1964).

in vertical white lettering on a grey stripe of the front panel that is bordered by a red stripe. Its Waring name appears in logo form in white letters on a red rectangle. All of Waring's products, including its Juice Extractor and Vortex Blendor, share this trade dress, which Waring has used since 1985, that is one full year before the introduction of Braun's blender.

In addition, Waring's prominent labelling of the carton with its brand name and trademark logo is probative evidence that the cartons are not confusingly similar. *Litton*, 728 F.2d at 1446 ("[t]he most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure ... of the manufacturer's or trader's name [and when] that is done, there is no basis for the charge of unfair competition); *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir.1972) ("there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed"); *Black & Decker, Inc. v. North American Philips Corp.*, 632 F.Supp. 185, 193 (D.Conn.1986) (conspicuous use of "well-known" Norelco trademark on $20–$40 vacuum cleaner is evidence of no likelihood of confusion).

In addition, Braun's failure to proffer survey evidence, empirical studies, or disinterested testimony from consumers or members of the trade as to this issue, suggests that the public is not likely to be confused with respect to source by reason of any resemblance between the cartons. *Essence Communications, Inc. v. Singh Industries, Inc.*, 703 F.Supp. 261, 269 (S.D.N.Y.1988) (plaintiff's failure to provide survey evidence gives rise to inference of no likelihood of confusion); *Lever Brothers Co. v. American Bakeries Co.*, 693 F.2d 251, 258 (2d Cir.1982) (three years of sales without "one documented instance of actual confusion" warrants inference of no likelihood of confusion).

## C.

At first blush, it may seem inconsistent that empirical evidence regarding likelihood of confusion is of considerable significance in determining trademark and trade dress

infringement, yet it is, as stated in Part II(C), of less significance in determining design patent infringement. However, the difference in weight given to empirical evidence is fully understandable in light of the stark differences between the elements required to show design patent infringement and trademark and trade dress infringement.

In particular, as was previously stated in Part V(A), purchasers' likelihood of confusion as to the source of a good is a necessary factor for determining trademark and trade dress infringement. *Coach Leatherware*, 933 F.2d at 168. To show infringement, the holder of a trademark or trade dress therefore must have progressed to the manufacture and distribution of a "purchasable" product. As a result, consumer behavior in the marketplace is a highly relevant factor in determining trademark and trade dress infringement. Since surveys and other empirical studies are ordinarily probative evidence of consumer behavior in the marketplace, such evidence has significance in determining trademark and trade dress infringement.

In contrast, as suggested in Part II(A), a different quantum of proof applies to design patent infringement, which does not concern itself with the broad issue of consumer behavior in the marketplace. *Unette*, 785 F.2d at 1029. The single element here required to show design patent infringement involves a much narrower field of inquiry. In short, a design patentee may prove infringement simply by showing that an ordinary observer would be deceived by reason of an accused device's ornamental design. *Gorham*, 81 U.S. at 528. Therefore, in showing design patent infringement there is ordinarily no compelling need for empirical evidence.

## D.

The term "passing off" has been used loosely by courts as a common law basis for liability in several different situations. *See* J.T. McCarthy, 2 *Trademarks and Unfair Competition* § 25:1A (2nd ed. 1984). However, as applied to the facts of this case, the parties agree that Waring's

liability under the common law doctrine of "passing off" is contingent on its being liable under section 43(a) of the Lanham Act. *See generally Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). Thus, to the extent that Braun's trade dress claim must be remanded, so too must its passing off claims. However, to the extent that we have determined that Waring is not liable under section 43(a) of the Lanham Act, it is also not liable under the doctrine of "passing off."

## VI. Attorney Fees

Braun's argument that the district court erred in denying its motion for attorney fees lacks merit. Section 285 of Title 35 provides that a court may, in an exceptional patent infringement case, award attorney fees to the prevailing party. *See also* 15 U.S.C. § 1117 (court may award reasonable attorney fees in exceptional trademark cases). Whether a case is an exceptional one rests with the court's discretion, even where there has been a finding of intentional infringement. *Cen-*

*taur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1229 (2d Cir.1987). *See also Modine Manufacturing Co. v. Allen Group, Inc.,* 917 F.2d 538, 543 (Fed.Cir.1990) (jury finding of willful infringement did not preclude district court from exercising discretion to deny attorney fees under 35 U.S.C. § 285). Here, the district court determined that Waring did not defend in bad faith and therefore the case was not exceptional. Thus, there is nothing to suggest the district court abused its discretion in declining to award attorney fees. In any event, Braun is not entitled to attorney fees in light of this Court's holding that Waring did not willfully infringe Braun's design patent or trade dress. *Read Corp. v. Portec, Inc., supra; State Industries, Inc. v. A.O Smith Corp.,* 751 F.2d 1226, 1238 (Fed.Cir.1985).[26]

## VII. Costs

Each party will bear its own costs.

AFFIRMED–IN–PART AND REVERSED–IN–PART AND REMANDED.

---

**26.** Braun also says the district court erred because it did not expressly consider whether attorney fees should be awarded under the Connecticut Unfair Trade Practices Act § 42–110g. However, Braun's memorandum in support of its motion for attorney fees did not present any arguments expressly directed to Connecticut law. *See Rolls–Royce, Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1108 (Fed.Cir.1986) (arguments not presented to district court cannot serve as a basis for reversal).