**THK AMERICA, INC., Plaintiff,**

v.

**NSK CO. LTD., and NSK Corporation, Defendants.**

No. 90 C 6049.

United States District Court, N.D. Illinois, E.D.

Sept. 3, 1993.

---

**5.** The defendants' joint defense agreement does not work to extend the privilege. *See* Note 3, *supra.*

John E. Kidd, John E. Daniel, and Michael
A. O'Shea of Shea & Gould, New York City,
James E. Armstrong, III, Ken-ichi Hattori

and William F. Westerman of Armstrong, Westerman, Hattori, McLeland & Naughton, Washington, DC, and Robert E. Wagner and James J. Jagoda of Wallenstein, Wagner, Hattis, Ltd., Chicago, IL, for plaintiff.

Charles E. Miller, Scott D. Stimpson and Brian D. Siff of Pennie & Edmonds, New York City, and Thomas Campbell, Richard W. Young and Brian C. Rupp of Gardner, Carton & Douglas, Chicago, IL, for defendants.

### ORDER

ROSEMOND, United States Magistrate Judge.

Defendants have filed a *"Motion For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Federal Rules Civil Procedure."* **The motion is denied.**

On April 22, 1992, THK filed a *"Motion To De-Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions."* By *Order* dated August 6, 1993, the motion was granted.

With respect to that part of THK's motion seeking to compel the defendants to produce opinions of counsel regarding infringement, validity, and enforceability, the Magistrate Judge ruled that in light of THK's willfulness allegations the defendants were required to either waive the attorney-client privilege and comply with THK's discovery requests or file with the Court a *Statement* assuring the Court and THK that the defendants would not pursue a defense based on the information covered by the privilege. The defendants were not ordered to make such an election by a date certain because the Court's concomitant ruling that the defendants had waived the attorney-client privilege made entry of such an order unnecessary. The Magistrate Judge's August 6th Order clearly indicates that if such an election had been ordered defendants would have been required to make it by August 16th.

On May 13, 1992, concurrent with the filing of their brief opposing THK's motion to de-designate, defendants filed a motion to bifurcate the issue of willfulness, *to-wit:* *"Motion For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P."* **"[O]nly willfulness is requested to be bifurcated."** [1]

As noted earlier, willful infringement has been alleged by THK and denied by the defendants. An allegation of willful infringement presupposes that the infringing party knows of the plaintiff's patent rights. Generally speaking, once a party learns of the existence of a patent, that party must act responsibly and seek the advice of competent legal counsel before taking any potentially infringing action [2]:

> "Where . . . a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing." [3]

> "Such an affirmative duty includes, *inter alia,* the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity." [4]

Although not determinative, failure to seek legal advice will support a finding of willful infringement.[5] Conversely, reliance on counsel's advice "militates against a finding of

---

1. *"Memorandum In Support Of Defendants' Request For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P.",* at 11.

2. *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1428 (Fed.Cir.1988).

3. *Rohm and Haas Co. v. Mobil Oil Corp.,* 654 F.Supp. 82, 85 (D.Del.1987), *quoting, Underwater Devices, Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1389 (Fed.Cir.1983), *citing, Milgo Electronic Corp. v. United Business Communications, Inc.,* 623 F.2d 645, 666 (10th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

4. *Rohm and Haas,* 654 F.Supp., at 85, *quoting, Underwater Devices,* 717 F.2d, at 1390 (emphasis in original).

5. *Ryco,* 857 F.2d, at 1428.

willfulness." [6]  A willfulness determination may entitle a party to treble damages.[7]

In their bifurcation motion, defendants propose the following trial format:

> In the context of our case, the presiding judge will hear all of the evidence at the liability and damages trial. **There will simply be no need for any duplicative evidence, since a separate willfulness trial will not be a jury trial.** The judge may consider any additional evidence the parties wish to present (including, if defendants decide to waive the attorney-client privilege, the opinion letters) after which the Court can make its willfulness determination.[8]

As evident from the above, under the defendants' proposal, there would be a jury trial on liability and damages followed by a bench trial on willfulness.

Defendants' bifurcation motion is not filed on a blank slate. It is filed against the backdrop of a previously filed (and judicially resolved) motion seeking bifurcation of the liability phase of the trial from the damages phase of the trial.

On April 24, 1991, *"Defendants' [first] Motion For Separation Of Issues And Stay Of Discovery"* was filed. The motion was filed pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, and sought "to separate the issues of liability and damages." [9]  More specifically, the motion sought "bifurcation of the issues of invalidity, unenforceability and non-infringement ('the liability issues') from issues related to damages, including willful infringement ('the damages issues')."

By *Order* dated August 20, 1991, the Magistrate Judge denied defendants' April 24th bifurcation motion. In denying the defendants' motion, the Magistrate Judge observed that certain evidence in a patent infringement case was relevant to both liability and damages issues—particularly, evidence relating to the question of whether the alleged infringement was willful which would also touch upon both liability and damages issues.

Although this case appears to be a straightforward patent infringement action involving technology which is not complex, an evidentiary format that constitutes a logical and understandable presentation to a jury must still be devised. Additionally, cost considerations may dictate a certain flexibility in the presentation of the evidence—such as taking some testimony out of sequence in order to accommodate out-of-town witnesses. In any event, it is likely that evidence on the issue of patent validity will be presented first.

■ *Patent validity.* A necessary predicate to a finding of patent infringement is a determination that the patent is valid.[10] An invalid patent cannot be infringed.[11]  A patent is presumed to be valid, and the burden of proving facts establishing invalidity is on the patent challenger.[12]  The patent challenger must establish patent invalidity by clear and convincing evidence, " 'and the ultimate burden of persuasion never shifts from the patent challenger.' " [13]

■ Defendants have asserted an "obviousness" defense. Patent invalidity based on obviousness may be rebutted in a variety of

---

**6.**  *Keyes Fibre Co. v. Packaging Corporation of America,* 763 F.Supp. 374, 375 n. 1 (N.D.Ill. 1991) (Judge Bua).

**7.**  *Ryco,* 857 F.2d, at 1429.

**8.**  *"Memorandum In Support Of Defendants' Request For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P.,"* at 11.

**9.**  Rule 42(b) does not give parties an absolute right to separate trials. **Whether or not separate trials are ordered lies solely within the discretion of the trial court, and the court's interest in** efficient judicial administration is controlling. *Eichinger v. Fireman's Fund Ins. Co.,* 20 F.R.D. 204, 207–208 (D.C.Neb.1957).

**10.**  *Pacific Furniture Mfg. v. Preview Furniture Corp.,* 626 F.Supp. 667, 671 (M.D.N.C.1985).

**11.**  *Pacific Furniture Mfg.,* 626 F.Supp., at 671.

**12.**  *Pacific Furniture Mfg.,* 626 F.Supp., at 671, citing, the patent statute, 35 U.S.C. § 282.

**13.**  *Pacific Furniture Mfg.,* 626 F.Supp., at 671, quoting, *Jones v. Hardy,* 727 F.2d 1524, 1528 (Fed.Cir.1984).

ways. One way would be for plaintiff to show that there are certain "secondary considerations" which demonstrate that the plaintiff's patents are not obvious. Among the secondary considerations to be weighed and analyzed by the jury are commercial success and long-felt need. Evidence regarding the commercial success of plaintiff's patented linear guides will be the *same* in significant respects as the evidence relating to damages and, therefore, ought to be presented once rather than twice. The evidence will include the number of infringing products sold by the parties and the amount received for each product.

Evidence of long-felt need will involve considerations of the machine tool and other industries and the problems sought to be addressed by such industries prior to the arrival of the patented inventions. If bifurcated trials were held, such evidence would have to be presented again in connection with the damages issues.

■ *Infringement.* In a patent infringement action, patent claims measure the invention and define the boundaries of patent protection.[14] It is well-established that in determining whether an accused device infringes a valid patent, resort must be had in the first instance to the words of the claim. If an allegedly infringing product falls literally within the claim, infringement is made out and that is the end of it.[15]

■ The issue of infringement involves at least two questions, *to-wit:*

(1) what is the thing patented,

*and*

(2) has what is patented been made, used or sold by the alleged infringer? [16]

The first is a question of law; the second is a question of fact.[17] Thus, "to resolve the issue of infringement, a court must initially determine the proper scope of the claims of the patent, [*and*] [o]nce the claims have been construed, the court must examine the defendant's allegedly infringing activity to determine if it falls within the scope of the claims." [18]

■ Potentially, evidence of infringing conduct by a defendant occurring after notice or discovery of the existence of a patent or an inventor's patent rights may not only be relevant to the issue of liability but also, if no pre-litigation infringement or validity opinions of counsel were sought and obtained prior to engaging in the infringing conduct— could be relevant to the issue of willfulness.[19] The overlap should be dealt with in one case.

■ In determining whether or not infringement exists, the desire or intent to infringe a patent is irrelevant.[20] Intent is crucial to the issue of willfulness.

■ *Willfulness.* Whether infringement is willful is a question of fact.[21] A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact *inextricably* bound to the facts underlying the alleged infringe-

14. *Rite–Hite Corp. v. Kelley Co., Inc.,* 629 F.Supp. 1042, 1064 (E.D.Wis.1986), *affirmed,* 819 F.2d 1120 (Fed.Cir.1987).

15. *General Battery Corp. v. Gould, Inc.,* 545 F.Supp. 731, 760 (D.Del.1982), citing, *Graver Tank and Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

16. *SSIH Equipment S.A. v. United States International Trade Commission,* 718 F.2d 365, 376 (Fed.Cir.1983); and *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569 (Fed.Cir.1983).

17. *Id.*

18. *Mobil Oil Corp. v. Amoco Chemicals Corp.,* 779 F.Supp. 1429, 1442 (D.Del.1991). *See also,*

*Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 819 (Fed.Cir.1992) ("The issue of patent infringement is one of fact").

19. *See, e.g., Great Northern Corporation v. Davis Core & Pad Company,* 782 F.2d 159, 166 and 167 (Fed.Cir.1986); and *Ralston Purina Co. v. Far–Mar–Co., Inc.,* 772 F.2d 1570, 1577 (Fed.Cir. 1985).

20. *Wilden Pump & Engineering Co. v. Pressed & Welded Products Co.,* 655 F.2d 984, 989 (9th Cir.1981), citing, *Hughes Tool Co. v. G.W. Murphy Indus., Inc.,* 491 F.2d 923, 928 (5th Cir. 1973); and *Thurber Corp. v. Fairchild Motor Corp.,* 269 F.2d 841, 849 (5th Cir.1959).

21. *Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 822 (Fed.Cir.1992).

ment.[22] In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness.[23] Factors considered include: the infringer's deliberate copying of the ideas or designs of the inventor, the infringer's knowledge of the inventor's patent rights, any good faith belief of invalidity or non-infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant.[24] Undoubtedly, because willfulness is determined from the totality of the circumstances, it is the reason why some courts prefer to include the issue of willfulness with the liability phase of a bifurcated trial.[25]

*Potentially, evidence necessary to prove damages whether damages are predicated on a theory of "loss profits" or on a theory of "reasonable royalty" or both may also relate to liability issues.* Lost profits are established by showing (1) a demand for the product in question; (2) the absence of an acceptable non-infringing substitute during the period of infringement; (3) the patent owner's ability to meet and exploit the demand; and (4) computation of the amount of profits the patentee would have made. A reasonable royalty, in turn, is measured based on what a person wanting to manufacture, use or sell a patented article would be willing to pay as royalty while obtaining a reasonable profit.

Among the factors considered in determining lost profits and reasonable royalty are (a) the amount of profit made selling the patented inventions; (b) the nature of products competitive with the patented devices; (c) failure of others to design around the patented products; (d) recognition of the quality of the patented products; and (e) whether the patents were willfully infringed. Thus, argues plaintiff, there will be an overlap of evidence relating to both liability and damages issues.

Plaintiff correctly argues that the damages trial cannot be conducted in an evidentiary vacuum. A jury will have to be familiar with the patents at issue, the products, and the linear guide industry itself. Therefore, much of the evidence that can be expected to be introduced in a trial on damages will be duplicative of the evidence that can be expected to be presented in a trial on liability. If the case were bifurcated, it would be necessary to revisit the testimony and demonstrative evidence that previously had been used to explain to the liability jury, *to-wit:* what linear guides are, how they operate, how they are made, used and sold, and other basic information. It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times.[26]

In any event, contrary to defendants' "contentions, it is not now a 'well accepted rule in patent litigation' for courts to proceed first with a liability trial, and reach damages and willful infringement issues in a separate and

**22.** *Kimberly–Clark Corporation v. James River Corporation of Virginia,* 131 F.R.D. 607, 609 (N.D.Ga.1989).

**23.** *Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 822 (Fed.Cir.1992) ("Willfulness is determined from the totality of the circumstances").

**24.** *Mobil Oil Corp. v. Amoco Chemicals Corp.,* 779 F.Supp. 1429, 1484 (D.Del.1991), *citing, Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed.Cir. 1986), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988); and *American Standard, Inc. v. Pfizer, Inc.,* 722 F.Supp. 86, 106 (D.Del. 1989).

**25.** *See, e.g., General Battery Corp. v. Gould, Inc.,* 545 F.Supp. 731, 761 (D.Del.1982) (a bifurcated patent case wherein the trial judge made a willful infringement determination at the end of the liability phase, but reserved decision on whether to increase damages or to award attorney fees until the end of the damages phase); and *Tyler Refrigeration Corp. v. Kysor Industrial Corp.,* 601 F.Supp. 590 (D.Del.), *affirmed,* 777 F.2d 687 (Fed.Cir.1985), where notwithstanding that the issue of damages was bifurcated from the trial on the issues of patent validity and infringement, *the trial court heard testimony on the issues of willfulness and exceptionality during the liability phase of the trial.* Even though this evidentiary format was followed, the trial court exercised its discretion and deferred making the willfulness determination until after the damages phase of the case.

**26.** *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 117 (E.D.La.1992).

later trial if necessary."[27] A single trial generally tends to lessen the delay, expense, and inconvenience to all concerned.[28] Accordingly, in "patent cases, as in others, separate trials should be the exception, not the rule." [29]

■ Rule 42(b) bifurcation motions which *broadly* seek entry of orders decreeing that discovery and trial on the issue of willfulness take place after a final decision on the issue of liability, and that the willfulness issue be made part of the subsequent discovery and trial on the issue of damages are not always granted.[30] Instead, such motions, if not denied outright, are only granted to the limited extent that discovery and testimony involving the opinions, communications, or depositions of counsel relevant to proving willfulness is deferred to the damages phase of the trial.[31] However, in the Magistrate Judge's August 20, 1991 *Order,* defendants' broad and conclusory Rule 42(b) motion was denied outright.

*"Defendants' [1991] Motion For Separation Of Issues And Stay Of Discovery"* sought to separate the issues of liability and damages, *and* to stay discovery on the issue of damages until a determination of liability was reached. Like the *Rohm and Haas* Rule 42(b) movants, defendants sought too much through their bifurcation motion. Defendants sought more than just separate trials—they **sought separate trials with two different juries:**

> The Court: Why doesn[n't] the plaintiff ... want ... bifurcation?
>
> Defendants: They contend primarily that the separation of the issues for trial of damages from liability will require separate trials by the jury.[32] Now, that is not in and of itself a basis for denying bifurcation.

The Court: Isn't it normally handled by the same jury? Doesn't the same jury hear both cases? Don't they hear the liability [phase], and if they determine [that] there is liability, they hear the damages part of it, don't they?

Defendants: They can, if discovery on the damages question is concurrent with the ... discovery on liability; discovery would be complete as of the time the trial commences.

The Court: So this [defendants' proposed bifurcation] would be two different juries, then?

Defendants: **In our case, since we are requesting severance of discovery with respect to damages, *it could and probably will require separate juries* if and only if plaintiff can prevail on all the issues raised as defenses in this action with respect to liability and validity of the patent.**[33]

*[and]*

Defendants: ... we are talking about the possibility of having two separate juries, two separate trials in the event plaintiff can prevail on the infringement and liability issues.[34]

Accordingly, it is beyond peradventure that defendants first bifurcation motion sought separate discovery and separate trials by separate juries on the issues of liability and damages.

■ In considering whether or not to grant a Rule 42(b) bifurcation motion, a court must remain mindful of the traditional role of the factfinder, *to-wit:* to make an ultimate determination on the basis of a case present-

---

27. *Laitram Corp.,* 791 F.Supp., at 114.

28. 5 *Moore's Federal Practice* § 42.03[1] at 42–37 to 42–38 (2d ed. 1982).

29. *Id.*

30. *See, e.g., Rohm and Haas Co. v. Mobil Oil Corp.,* 654 F.Supp. 82, 86 and 87 (D.Del.1987).

31. *Id.*

32. Transcript ("Tr.") of the July 30, 1991 proceedings before the Magistrate Judge, at 6.

33. Tr. 7 (emphasis added). *See generally,* "Memorandum In Support Of Defendants' Motion For Separation Of Issues And Stay Of Discovery," at 8 and 9 (filed April 23, 1991).

34. Tr. 11 (and Tr. 15).

ed in its entirety.[35] Factors to be considered include (1) convenience; (2) prejudice; (3) expedition; (4) economy; (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.[36] In considering the record, perforce these factors were weighed by the Magistrate Judge, albeit not all were expressly enunciated in the August 20th *Order*.

Then, as now, defendants ignore the fact that this is a foreign-based litigation. Tens of thousands of documents have been and are being produced by companies located on foreign soil, and shipped across the seas to law firms in New York. Virtually all of the documents are in the Japanese language. Translators galore are employed by both sides to translate business and corporate records, patents, and other technical documents from the Japanese language to English. Perforce, the disruption to the normal flow and routine of the businesses of the litigants caused by the substantial document production was and remains enormous, as must be the expense in terms of manpower, time, and money.

Defendants admit that "discovery on the damages issue will be significant and substantial," as "[i]t will involve thousands and thousands of documents to determine the economic and the cost-accounting factors that go into a determination of [damages assuming damages are predicated on a theory of] lost profits."[37] And, if damages are additionally predicated on a theory of "reasonable royalty," the "amount of the royalty for each infringed product depends upon detailed and complicated financial and accounting data concerning, among other things, the infringing product's commercial success, and how much of that success can be attributed to the infringed invention."[38]

The parties have a discovery network in place. Under defendants' first bifurcation motion, the parties would have been required to dismantle this network, conduct a several week jury trial on liability issues and, if the plaintiff were successful, re-create another discovery network for a separate and subsequent damages trial by a different jury. The disruption to plaintiff's business would have been two-fold. Separate trials would also have unduly increased plaintiff's litigation costs.

More translators in the form of triumvirate battalions are used by the parties for deposition discovery. Each side has its interpreter who listens to the translation of the chief interpreter. If a dispute regarding the chief interpreter's translation occurs, a conference of all three of the interpreters is held to determine the most accurate translation which is determined by a consensus of all three. Questions propounded by English-speaking attorneys are translated into Japanese for Japanese-speaking deponents. The answers of the Japanese-speaking deponents are then translated into English for the English-speaking attorneys. This format is enormously costly in terms of manpower, time, and money.

The parties have suggested that this case could be tried in three weeks. Neither side was being realistic. If the triumvirate form of translation is used, more likely than not the trial will be closer to six weeks. The costs of flying in witnesses from Japan to Chicago, Japanese–English translators from who-knows-where to Chicago, and battalions of attorneys from New York to Chicago, with reinforcements of local Chicago counsel, for trial, plus the costs of meals and lodging for the same will be enormous. The burden on the limited public resource, which the trial

---

**35.** *Kimberly–Clark Corporation v. James River Corporation of Virginia,* 131 F.R.D. 607, 608 (N.D.Ga.1989).

**36.** *Kimberly–Clark,* 131 F.R.D., at 607.

**37.** Tr. 15.

**38.** *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 116 (E.D.La.1992).

court represents, in terms of trial time and disruption of trial calendar and caseload, will be substantial. Accordingly, considerations of convenience; prejudice; expedition; economy; and fairness dictated in 1991, as now, that neither the litigants nor the trial court be compelled to run this three to six week gauntlet more than once.

Familiar with the record, it was the Magistrate Judge's thinking then, as now, that separate jury trials and separate discovery phases would not in any way promote judicial economy. Instead, it would result in additional expense to all parties, and would unduly prolong the litigation to the prejudice of the plaintiff.[39] The prejudice is all the more critical to the plaintiff because its chief executive and the alleged inventor of the patents at issue is a very elderly man whose remaining days on this earth may well be limited. It must be remembered that the paramount consideration regarding bifurcation remains "a fair and impartial trial to all litigants through a balance of benefit and prejudice."[40] Ultimately, the decision whether to bifurcate is a practical one.

Finally, as correctly observed by plaintiff, a bifurcation order directing separate trials before two different juries with two discrete discovery periods would *not* serve judicial economy in one other important way. If discovery during the first time period were limited solely to liability issues, "the parties are likely to come to the Court with *repeated disputes over how requested material is related to liability, damages, state of mind, or all these issues*"[41], which will burden the Court time-wise, and unduly increase the costs of litigation for both parties. As it is, the Court has been inundated with discovery motions, as well as, telephonic conferences with counsel of record to resolve deposition discovery disputes.

By *Order* dated October 18, 1991, the District Judge affirmed in its entirety the Magistrate Judge's decision not to bifurcate:

### I. Defendants' Motion for Separation of Issues and Stay of Discovery.

The magistrate-judge found that bifurcation of the liability and damage issues in this case as well as a stay in discovery were unnecessary. The court, too, believes that a substantial overlap in the evidence for the liability and damage stages of the proceeding is likely. Accordingly, the court adopts the magistrate-judge's report and recommendation in full. Defendants' motion for bifurcation of trial issues and stay of discovery is denied.[42]

Against this obvious backdrop of foreign-based litigation, defendants' April 24, 1991 bifurcation motion offered no alternative options to its all-or-nothing request for relief. Defendants' first bifurcation motion proffered no details on how to minimize the obvious costs in having bifurcated discovery and a bifurcated trial. No assurances were given that the defendants, for example, would not depose certain individuals for the liability phase and then later in the damages phase of the litigation depose the same individuals a second time. No proposal for a damages conference with the Court to sort out the obvious and major logistic concerns involved in having bifurcated discovery and a bifurcated trial was ever recommended. No plan or proposal for avoiding duplication of effort and energy by the parties or the Court with respect to discovery or the presentation of evidence at trial was tendered. Instead of offering specifics or discussing details, defendants presented a broad and sweeping motion which two judges denied.

Defendants' May 13, 1992 bifurcation motion is nothing more than a second

---

**39.** Courts "should not order separate trials when 'bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'" *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 115 (E.D.La.1992), quoting, *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1433 (D.Del. 1989).

**40.** *Kimberly–Clark,* 131 F.R.D., at 609.

**41.** *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 117 (E.D.La.1992).

**42.** *THK America, Inc. v. NSK, Ltd.,* Case No. 90 C 6049, *Order,* at 1 (N.D.Ill. October 18, 1991) (Judge Bua). The case was previously assigned to The Honorable Nicholas J. Bua who retired from the Bench on November 4, 1991.

bite at the proverbial apple. It is in reality an alternative proposal which could have been proposed in defendants' April 24, 1991 bifurcation motion. It is unfair to THK to have to re-litigate matters already resolved or which could have been resolved had defendants presented the issues—as they should have—in their 1991 bifurcation motion. THK is entitled to rely on the finality of certain issues, and not be forced to combat resurrected demons. It is for this reason that THK should be reimbursed for its reasonable attorneys' fees necessarily incurred in being forced to re-litigate a matter put to rest over a year ago.

An award of attorneys' fees is also warranted because defendants' present motion not only presents nothing new by way of facts or law from what was or could have been proffered in the 1991 bifurcation motion, but their second bifurcation motion presents a completely contrary position. In 1991, before the Court, defendants argued that the issue of willfulness was an issue for the jury:

**Defendants:** The entire issue of willfulness need not be considered by the jury in the first trial.

**The Court:** Then it would be in the second one, wouldn't it?

**Defendants:** Well, *the question of willfulness would be an issue of fact that would be determined by the jury on evidence having to do with defendants' intent that need not be presented or dealt with in the first trial.* And the question [43] of whether or not willfulness, if proven, which we do not think it can be, but if proven, is not to be determined by the jury insofar as whether multiple damages ought to be awarded. That's the province of the judge.

**43.** Transcript of the July 30, 1991 proceedings before the Magistrate Judge, at 12.

**44.** Tr. 13 (emphasis added).

**45.** *"Defendants' Objections Under Rule 72(a) Fed. R.Civ.P. To The Magistrate's Order On Defendants' Motion For Bifurcation,"* at 14 and 15 (Filed September 5, 1991) (emphasis in the original).

**46.** *"Reply Memorandum In Support Of Defendants' Request For A Separate Trial On The Issue*

*The jury would consider whether or not the patents were willfully infringed,* if they were infringed at all.[44]

*[and ]*

It is a function of the *damages jury* to determine if defendants' conduct was willful.

Further, the damages jury does not "assess damages for willful conduct" as the Magistrate stated in his opinion. Rather, it is the function of the *Judge* to decide whether damages shall be multiplied, and if so to what degree, in light of the damages jury's determination of willfulness.[45]

Now, defendants argue that willfulness is an issue solely for the court:

*Willfulness Is An Equity Issue And As Such It Is Not For A Jury To Decide.*[46]

*[and ]*

If a trial on the issue of willfulness should become necessary, it is the Judge, not the jury, that will make the determination of willfulness.[47]

Defendants were right the first time. The case of *Laitram* [48], notwithstanding, willfulness is a jury issue. Whether an award of multiple damages is appropriate is solely within the province of the trial judge. In any event, the point is that the defendants may not cavalierly argue *contrary* positions to the Court with impunity.

Additionally, as noted above, defendants may not file a broad and sweeping bifurcation motion, lose, and then use the loss as a ground for filing yet another motion narrowly drawn to deal with just one aspect of the previously filed motion. Nor may a litigant argue contrary positions to the court. Such

*Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P.",* at 7.

**47.** *"Memorandum In Support Of Defendants' Request For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P.",* at 10.

**48.** *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113 (E.D.La.1992).

litigation tactics suggest an effort to vexatiously augment an opposing party's litigation expenses.

**Accordingly, it is adjudged, decreed, and ordered as follows:**

1. Defendants' *"Motion For A Separate Trial On The Issue Of Willfulness And For Deferral Of Discovery Of Attorney Opinion Letters Pursuant To Rules 42(b) And 26(c), Fed.R.Civ.P."* is denied.

2. Plaintiff is awarded its reasonable attorneys' fees and costs necessarily incurred in responding to defendants' motion.[49]

**So Ordered.**

R. Wayne Harvey, Peoria, IL, for plaintiff.

Lyndon C. Molzahn, Chicago, IL, R. Michael Henderson, Peoria, IL, for defendant.

---

**49.** Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the parties are given 10 days after being served with a copy of the Order to file exceptions thereto with The Honorable Charles R. Norgle, Sr. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's order. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir.1986). *See also, The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 261 (7th Cir. 1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's order).