**Bryan REAL, Plaintiff,**

v.

**BUNN–O–MATIC CORPORATION, Defendant.**

**No. 99 C 3751.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 25, 2000.

Paul G. Juettner, Greer, Burns & Crain, Ltd., Chicago, IL, for plaintiff.

Randall G. Litton, Steven L. Underwood, Price, Heneveld, Cooper, Dewitt & Litton, Rapids, MI, for plaintiff.

Grant H. Peters, Thomas J. Donovan, Trexler, Bushnell, Giangiori & Blackstone, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Bryan Real ("Real" or "Plaintiff") is the owner of a patent for a beverage dispensing machine, United States Patent No. 4,488,664 ("the '664 patent"), and has filed a patent infringement suit against Defendant Bunn–O–Matic Corporation ("Bunn–O–Matic" or "Defendant"). Plaintiff alleges infringement of one patent by one product made by Bunn–O–Matic in violation of 35 U.S.C. § 271(a), (b) and (c). The Court conducted a *Markman* hearing and issued an opinion construing Claim 1 in the '664 patent. *Real v. Bunn–O–Matic Corp.*, 100 F.Supp.2d 844 (N.D.Ill.2000). Defendant now brings a motion, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, to bifurcate the issue of liability from the issues of damages and willfulness and to stay discovery on the issues of damages and willfulness until a determination on liability has been made.

This is a relatively simple patent case: it involves a complaint of infringement of one claim in one patent by one product with one plaintiff and one defendant. There will be one trial. For the reasons set forth below, Defendant's motion to bifurcate the trial and to stay discovery is denied.

## I. BACKGROUND

### A. THE '664 PATENT

The '664 patent, entitled "Beverage Dispensing Machine," was issued to inventor Robert K. Cleland on December 18, 1984. It was assigned on April 1, 1999 to Real, who, wasting no time, sent a cease and desist letter to Bunn–O–Matic on April 12, 1999, accusing Defendant of patent infringement. This suit was filed on June 4, 1999. Bunn–O–Matic obtained a written opinion of its patent counsel dated June 17, 1999 (the "Opinion Letter") regarding the issue of possible infringement. Bunn–O–Matic's patent counsel is also its trial counsel.

The '664 patent relates to an attachment unit that sits atop the tank of a non-carbonated beverage dispensing machine, such as the self serve models found in convenience stores. The unit mixes together powdered concentrate and water, delivers the mixture into the tank when the liquid level in the tank reaches a predetermined low level, and continues filling the tank until the liquid level reaches a predetermined high level. This invention avoids the need for pre-mixing the beverage solution in a separate container and manually pouring the mixture into the tank when the machine attendant notices that the beverage level is low.

After a *Markman* hearing, this Court issued an opinion adopting Plaintiff's proffered construction of Claim 1, the claim at issue. 100 F.Supp.2d 844. The decision centered largely on an electronic switching device within the beverage dispensing machine. In addition, Plaintiff admitted to four claim constructions sought by Bunn–O–Matic.

Defendant then filed a motion to bifurcate for discovery and trial the issue of liability from the issues of damages and willfulness, claiming that bifurcation will serve the interest of economy, efficiency and simplicity. Defendant also asserts that, in order to defend the allegations against willful infringement, it must reveal the contents of the Opinion Letter. Bunn–O–Matic claims that it now faces the dilemma of choosing between waiving the attorney-client privilege to defend itself against the allegations of willfulness, or maintaining the privilege and risk being found liable for willful infringement.

Thus the issues presented are: 1) whether the liability and damages issues should be bifurcated for trial pursuant to Rule 42(b); 2) whether the issue of willfulness should be bifurcated and tried with the issues of damages instead of liability to avoid prejudice; and 3) whether discovery on the issues of damages and willfulness should be stayed. The Court answers no to all three issues.

## II. BIFURCATION OF LIABILITY AND DAMAGES IS NOT WARRANTED

Rule 42(b) of the Federal Rules of Civil Procedure states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED.R.CIV.P. 42(b).

The Court observes that all the rules of civil procedure, including Rule 42(b), should be read in light of the overarching principles set forth in Rule 1. The rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1.

## A. Separate Trials Are The Exception, Not The Rule

The Court sees no reason to bifurcate the trial, as separate trials would not further any interest expressed in Rule 42(b). The piecemeal trial of separate issues in a single lawsuit is not to be the usual course. 9 *Charles A. Wright & Arthur R. Miller,* Federal Practice and Procedure: Civil 2d § 2388 (1995). Bifurcation in patent cases, as in others, is the exception, not the rule. *Remcor Products Co. v. Servend Int'l Inc.,* 1994 WL 594723 (N.D.Ill. Oct. 28, 1994); *THK Am. Inc. v. NSK Co. Ltd.,* 151 F.R.D. 625, 29 U.S.P.Q.2d 2020 (N.D.Ill.1993); *Kimberly–Clark Corp. v. James River Corp. of Va.,* 131 F.R.D. 607, 608 (N.D.Ga.1989). "[C]ourts should not order separate trials unless such a disposition is clearly necessary." *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113, 114 (E.D.La.1992). The decision to bifurcate pursuant to Rule 42(b) is one made on a case by case basis and committed to the discretion of the district court. *Kimberly–Clark,* 131 F.R.D. at 608. "In considering such a course, the court should remain mindful of the traditional role of the factfinder; i.e. to make an ultimate determination on the basis of a case presented in its entirety." *Id.* In order for a court to grant bifurcation, the party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case. *Novopharm Ltd. v. Torpharm, Inc.,* 181 F.R.D. 308, 310 (E.D.N.C.1998). Thus, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. Essentially, . . . courts must balance the equities in ruling on a motion to bifurcate." *Laitram,* 791 F.Supp. at 115.

### 1. A Court Must Weigh Competing Prejudices

When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration. *Id. See also Corrigan v. Methodist Hospital,* 160 F.R.D. 55 (E.D.Pa.1995) (separate trials are not granted absent a showing of "compelling prejudice" in criminal cases, and there is no reason to hold civil cases to a higher standard). The Court must balance two types of competing prejudice: first, prejudice that may arise because of potential confusion of a jury on complicated issues if bifurcation is denied; second, prejudice caused by the considerable delay that will result if separate trials and discovery is ordered. *Laitram,* 791 F.Supp. at 115–16. The former can be remedied with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury. *Corrigan v. Methodist Hospital,* 160 F.R.D. at 57. The latter cannot be remedied except by denying separate trials.

### 2. Separate Trials Are Ordered Only Under Extenuating Circumstances

In those cases that have granted motions for bifurcation, the facts and circumstances were such that bifurcation lent itself to judicial economy while not unduly prejudicing any party. Those extenuating circumstances include a) a need for voluminous documents to resolve damages issues; b) complex infringement issues; c) multiple patents, infringing products, claim, counterclaims, or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages.

#### a. Need For Voluminous Documents to Resolve Damages

In *Smith v. Alyeska Pipeline Serv. Co.,* 538 F.Supp. 977, 983 (D.Del.1982), the court ordered separate trials on the issues of liability and damages when the defendant represented to the court "that to resolve the damage issue will require a review of millions of documents and require extensive time both during discovery and at trial." Similarly, in *Novopharm,* the court ordered separate trials on a patent case surrounding the alleged infringement of a ranitidine hydrochloride product because "litigating the complex damages issues would place a heavy burden on the [alleged infringer] to produce voluminous documents." *Novopharm,* 181 F.R.D. at 311. The fact that this immensely time-consuming effort might be avoided if the jury found for the defendant in the liability portion of the trial was a factor in favor of bifurcation. *Id.*

#### b. Complex Infringement Issues

In *Kimberly–Clark,* the court set forth eleven factors that a court should consider when deciding whether to order separate trials: 1) convenience, 2) prejudice, 3) expedition, 4) economy, 5) whether the issues sought to be tried separately are significantly different, 6) whether the issues are triable by the jury or court, 7) whether discovery has been directed to a single trial of all issues, 8) whether the evidence required for each trial is substantially different, 9) whether one party would gain some unfair advantage from separate trials, 10) whether a single trial of all issues would create the potential for jury bias or confusion, and 11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement. *Kimberly–Clark,* 131 F.R.D. at 608–09. The court then ordered separate trials as to the issues of liability and damages because of the complex nature of the infringement portion of the case. However, the court held that the issue of willfulness went directly to the defendant's state of mind when it infringed on the patent and was a "finding of fact inextricably bound to the facts underlying the alleged infringement." *Id.* at 609. Accordingly, it denied defendant's motion to bifurcate the issue of willfulness from the issue of liability.

#### c. Multiple Patents, Infringing Products, Claims, Counterclaims, or Parties

In *Avia Group Int'l, Inc. v. Nike, Inc.,* 1991 WL 340569, 22 U.S.P.Q.2d 1475 (D.Or. Nov. 21, 1991), the court ordered separate trials because there were five patents at issue in the case with at least eight allegedly infringing products. The court reasoned that if the jury finds any one of the patents invalid, unenforceable or not infringed, separate trials on liability would promote judicial

economy by eliminating the need for a damages inquiry on those patents. Similarly, in *Paine, Webber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112 (D.Del.1984) the Court ordered separate trials when at issue was a patent claim, a patent counterclaim, a trademark counterclaim, and a trade secret misappropriation counterclaim surrounding complex financial instruments. The court reasoned that separate trials were appropriate "in view of the complex case to be tried with the allowed additional counterclaims." *Id.* at 1117.

### d. Probability That Defendant Would Prevail On Infringement Issue

Finally, in *Amsted Indus. Inc. v. Nat'l Castings, Inc.*, 1990 WL 106548, 16 U.S.P.Q.2d 1737 (N.D.Ill. July 11, 1990) the judge ordered separate trials because the Magistrate's opinion regarding a preliminary injunction found that the plaintiff was unlikely to succeed on the merits at trial. Thus, there was a very likely probability that the issue of damages would never be reached.

## B. A SINGLE TRIAL IS APPROPRIATE IN THIS CASE

### 1. This Case Has No Extenuating Circumstances That Warrant Separate Trials

■ This case represents one of the smaller and more simple patent cases that can possibly be filed. It involves one patent, one claim and one allegedly infringing product. If bifurcation were to be granted in this case, it would make bifurcation the rule, rather than the exception. The extenuating circumstances found in each of the aforementioned cases do not apply in this particular case. Defendant has provided no assertion that the damages portion would necessitate the review of "millions of documents" or "voluminous" amounts of evidence. Nor are the liability issues in a case surrounding an electrical switch overly complex. There is only one claim of one patent at issue in this case, as opposed to multiple patents. In addition, there is only one infringing product for the jury to consider. Also, no counterclaims have been made. Finally, while no opinion

has been issued expressly regarding the probability of success at trial, the *Markman* ruling was in Plaintiff's favor on all nine disputed issues.

### a. The Damages Calculation Is No More Complex Than That Of An Average Patent Case

This Court finds no compelling reason to conduct separate trials, particularly given the overwhelming weight of authority that separate trials should be the exception, not the rule. Although Defendant claims that complex damages calculations may be involved, there is no evidence to suggest that this computation is more unusual, complex or complicated than the average patent case. Of course, when lawyers put their minds to it, they can complicate anything, but that is not the test. This case involves only one patent and one allegedly infringing product. Under 35 U.S.C. § 289, an infringer is liable to a patent owner to the extent of his total profit. Likewise, lost profits from the powdered beverage that normally would be sold with the patented product will be calculated in a similar manner, assuming the Court determines that this is an appropriate element of damages. These are the types of computations regularly performed in patent litigation.

Under 35 U.S.C. § 284, damages should be awarded to the claimant "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." "The statute contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to a reasonable royalty damages based upon a hypothetical negotiation between patentee and the infringer when the infringement began." *Unisplay, S.A. v. American Electronic Sign Co.*, 69 F.3d 512 (Fed.Cir.1995). While these calculations may involve some approximation, it represents the type of calculations juries are required to make on a daily basis in courtrooms across the country. Under § 284, a court is allowed to increase damages up to three times the amount assessed or found, such as in the case of willfulness. *Fromson v. Western Li-*

*tho Plate and Supply Co.*, 853 F.2d 1568, 1572 (Fed.Cir.1988). *See also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 n. 17 (Fed.Cir.1992) (a court can award three times damages under § 284 but not under § 289, which applies only to profits). Again, this is a mathematical calculation.

"Although both [the lost profits and reasonable royalty] theories require the proof of numerous factors, the defendants have failed to show how the proof of damages in this particular case will be especially complex." *Home Elevators, Inc. v. Millar Elevator Serv. Co.*, 933 F.Supp. 1090, 1091 (N.D.Ga. 1996).

### b. The Technology and Liability Issues Are No More Complex Than The Average Patent Case And There Are Not Multiple Patents, Infringing Products, Claims, Counterclaims or Parties

Likewise, the issues surrounding the liability issue are no more complex than the average patent case. This case involves a single patent and a single claim, with no counterclaims. In the *Markman* hearing, which was completed in one day, there were nine disputed issues to be construed regarding one patent claim. Two of those issues involved the location and formation of a flange. The other issues involved the structure and operations of an electronic switching device. Issues surrounding an electrical device and a flange appear no more complex than those of other cases in which bifurcation has been denied. In a similar case involving patent infringement claims and counterclaims on a similar product, an ice/beverage dispenser, the court denied a motion to bifurcate. *Remcor*, 1994 WL 594723. Similarly, in *Laitram*, the court denied separate trials in a case involving calculator technology. 791 F.Supp. 113. In *Braun*, a case involving willful patent infringement of hand held electric appliances proceeded through the courts without separate trials. 975 F.2d at 815. Accordingly, this Court finds that the technology at issue does not involve concepts so complex as to require bifurcation.

In sum, "[t]he potential complexity of the issues in patent litigation, and the potential for proof of damages independent of proof of liability, are not peculiar to that field of law; nor is it correct to say that such characteristics, which are often found in patent litigation, and which favor separation, are necessarily a part of every case." *Brad Ragan Inc. v. Shrader's Inc.*, 89 F.R.D. 548, 550 (S.D.Ohio 1981). If that were so, then every patent case would be bifurcated, which is clearly not the standard.

### c. There is A Possibility That Plaintiff Will Prevail on Liability Issue

Finally, there is a possibility, given the Court's previous rulings in the Plaintiff's favor, that a jury will rule in favor of Plaintiff on liability thereby requiring the jury to address the issue of damages. The Court construed all nine issues in dispute in accordance with Plaintiff's proffered construction. While it is true, as Defendant contends, that a judgment in favor of Bunn–O–Matic would obviate the need for discovery on the issue of damages, this argument can be made in every case. However, this Court will not preclude a plaintiff from proceeding in the normal course of a trial and present evidence on both liability and damages merely because a defendant may ultimately prevail. *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F.Supp. 374, 376 (N.D.Ill.1991).

### 2. Balancing The Equities Weigh In Plaintiff's Favor

In balancing the equities of this case, the balancing weighs in Plaintiff's favor. There is no reason to believe that bifurcating the case would lead to judicial economy, be more expeditious, or reduce prejudice. Defendant offers no evidence regarding time or expenses that would be saved. Separate trials, in fact, would be highly prejudicial to Plaintiff and cause unnecessary delay and expense. The Court is mindful of the fact that this is an individual plaintiff going up against a corporation, which, in all probability, has the resources to absorb expenses and delays more easily than the Plaintiff. Having already determined that there is a strong possibility that a jury will need to hear issues on damages, an order of separate trials and separate discovery periods will only add un-

necessary and "considerable delay.... An unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation. It is clearly not in the public interest." *Laitram,* 791 F.Supp. at 116. In the event that liability is found, two separate trials with two separate juries at remote times would not serve judicial economy. *Home Elevators,* 933 F.Supp. at 1092. "A single trial generally tends to lessen the delay, expense, and inconvenience to all concerned," which is why separate cases are the exception. *THK,* 29 U.S.P.Q.2d at 2024, 151 F.R.D. 625.

In addition, there are overlapping issues between the damages and liabilities phases of a trial, which weigh in favor of a single trial. Overlapping issues would require evidence to be presented to two separate juries and witnesses to be brought back for second trial, which clearly does not serve the interest of the Court in economy, the interest of the parties in an expeditious resolution, or the interest of potential witnesses in mitigating their inconvenience. In a well reasoned opinion, the Court in *THK* laid out the necessary factors relevant to damages and how these factors overlap with those necessary to address the issue of liability:

> Potentially, evidence necessary to prove damages whether damages are predicated on a theory of "lost profits" or on a theory of "reasonable royalty" or both may also relate to liability issues. Lost profits are established by showing 1) a demand for the product in question; 2) the absence of an acceptable non-infringing substitute during the period of infringement; 3) the patent owner's ability to meet and exploit the demand; and 4) computation of the amount of profits the patentee would have made. A reasonable royalty, in turn, is measured based on what a person wanting to manufacture, use or sell a patented article would be willing to pay as a royalty while obtaining a reasonable profit.

> Among the factors considered in determining lost profits and reasonable royalty are a) the amount of profit made selling the patented invention; b) the nature of products competitive with the patented devices; c) failure of others to design around the patented products; d) recognition of the quality of the patented products; and e) whether the patents were willfully infringed....

> ... [T]he damages trial cannot be conducted in an evidentiary vacuum. A jury will have to be familiar with the patents at issue, the products, and the ... industry itself. Therefore, much of the evidence that can be expected to be introduced in a trial on damages will be duplicative of the evidence that can be expected to be presented in a trial on liability. If the case were bifurcated, it would be necessary to revisit the testimony and demonstrative evidence that previously had been used to explain to the liability jury, to wit: what [beverage dispensers] are, how they operate, how they are made, used and sold, and other basic information. It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times.

*THK,* 29 U.S.P.Q.2d at 2023, 151 F.R.D. 625.

The Court is also mindful of additional procedural issues that are likely to arise with two separate trials. It is not only possible, but probable, that repeated discovery disputes will arise over whether requested discovery is related to liability, damages, willfulness, or all these issues. *Laitram,* 791 F.Supp. at 117. Each dispute would require the attention of the Court, more paperwork and time by the attorneys, more costs, and possible delays. The parties may require multiple depositions of the same witnesses. A single trial moots these issues. In the event of an appeal, a single trial will be easier to review. The Court intends to permit one round of discovery, to resolve this case at one trial, and to create one record for possible later review.

On the other hand, the potential risk of prejudice resulting from complicated jury issues is not present here. The patent at issue does not present complex technology that would result in confusion. Nor are the legal theories on liability or damages particularly complex. Any potential confusion can be remedied by good lawyering, cautionary warnings, limiting instructions, or special

verdict forms. Indeed, it is the experience of this Court, as well as others, that jurors bring a collective wisdom, common sense and experience as well as intelligence and dedication to their task. *See Paine, Webber, Jackson & Curtis,* 587 F.Supp. at 1115. They are consistently asked to return verdicts in criminal cases with facts far more complex and with stakes much higher than the one at hand. The potential prejudice from jury confusion is simply not applicable to this case.

## III. BIFURCATION OF WILLFULNESS TO BE TRIED WITH DAMAGES IS NOT WARRANTED

■ Defendant contends that bifurcation on the issue of willfulness is mandated by *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642 (Fed.Cir.1991) and that attorney-client communications "clearly are irrelevant to the issue of patent infringement." Defendant further asserts that issues of willfulness and liability should be bifurcated to avoid the "serious risk of prejudice" if it "is forced" to rely upon an advice of counsel defense during the liability phase of trial. This Court disagrees.

First, the Federal Circuit has stated, in dicta, that trial courts should give "careful consideration" to an in-camera inspection of the opinion of counsel when a party is confronted with the dilemma of choosing between waiving the attorney-client privilege or maintaining the privilege and risk being found a willful infringer. *Quantum,* 940 F.2d 642, 644 (Fed.Cir.1991) ("[W]e have suggested the advisability of separate trials in appropriate cases.") The *Quantum* court then held that an order refusing to defer trial on the issue of willfulness was not immediately appealable. Far from a mandate to order separate trials whenever the issue of willfulness arises, the Federal Circuit advises careful consideration and separate trials in *appropriate* cases, which is precisely what this Court is doing.

The Court has carefully considered whether separate trials are warranted and has determined that this is not a case in which bifurcation is appropriate. The Court has made an in-camera inspection of Bunn–O–Matic's opinion of counsel as it relates to the accusation of infringement and holds that allowing discovery of the opinion will not unduly prejudice Bunn–O–Matic. In fact, disclosure of the Opinion Letter may moot the issue of willfulness, absent evidence of prior knowledge of the '664 patent on the part of Bunn–O–Matic.

Second, far from being irrelevant to the issue of patent infringement, as Defendant asserts,

[a] willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's deliberate copying of the ideas or designs of the inventor, the infringer's knowledge of the inventor's patent rights, any good faith belief of invalidity or infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant. Undoubtedly, because willfulness is determined from the totality of the circumstances, it is the reason why some courts prefer to include the issue of willfulness with the liability phase of a bifurcated trial.

*THK,* 151 F.R.D. 625, 29 U.S.P.Q.2d. at 2023 (denying Defendant's motion for separate trial on the issue of willfulness and for deferral of discovery of attorney opinion letters).

In addition, the question of whether the alleged infringement was willful is relevant to *both* liability and damages. "The evidence relating to [Defendant's] state of mind when it committed the [alleged] infringement, which is clearly relevant to damages, cannot be neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place." *Keyes Fibre,* 763 F.Supp. at 375. *See also Kimberly–Clark,* 131 F.R.D. at 609; *Alyeska Pipeline,* 538 F.Supp. at 986. The fact that the issue of willfulness is relevant to both damages and liability also weighs in favor of a single trial. It is one more issue that is overlapping, which, as previously discussed, would be

more convenient and expeditious for the Court, the parties, and the witnesses to be tried in a single trial.

The Federal Circuit is in agreement that willfulness is intertwined with the issue of infringement. The Federal Circuit has held that whether infringement is willful is a question of fact. *Braun*, 975 F.2d. at 822. Willfulness is determined from the totality of the circumstances, when viewed as a whole, and must be proven by clear and convincing evidence. *Id.* A jury's determination of willfulness is reviewable under the substantial evidence standard. *Id.* Thus, in order for a jury to determine willfulness from the totality of the circumstances, it is necessary for them to look at all the evidence as a whole. The determination of willfulness can not be easily partitioned into a separate issue to be decided in a vacuum. Although the court makes the determination of whether damages should be increased under 35 U.S.C. § 284, a jury must make the determination of willfulness. This also weighs in favor of a single trial.

Finally, although the Court is mindful of the dilemma which Bunn–O–Matic faces in the disclosure of its attorney-client communications and confidential information, it is an issue that cannot be reasonably resolved or avoided if Bunn–O–Matic intends to rely on the advice of counsel defense, in light of the probability that the issue of damages will be addressed. Defendants are not being "forced" to do anything. It is their choice to assert the advice of counsel defense. Privilege or no privilege, if Bunn–O–Matic intends to use such information at trial, Real is entitled to full disclosure in order to prepare its case. *Keyes Fibre*, 763 F.Supp. at 376. Bunn–O–Matic cannot be compelled to waive its attorney-client privilege, however, if it intends to stand behind the privilege, then it cannot introduce opinions or testimony of counsel at trial to refute the claims of willful infringement. *Id.* This may be one reason why parties choose not to have the same counsel give an opinion letter on the issue of infringement and later defend them at the same infringement trial. Bunn–O–Matic has chosen to have the same counsel for both, which is its choice. However, Defendant

should not foist the consequences of its decision on the Court or its opposing party.

Defendant would have the Court 1) preclude any discovery or trial as to the issue of willfulness until after a liability verdict is reached, 2) then proceed with discovery on the issue of willfulness and damages, and 3) then conduct a trial as to the issue of damages and willfulness requiring a reintroduction of much of the evidence presented in the first trial because of the need to determine willfulness based on the totality of the circumstances. This certainly does not further the interest of justice or judicial economy and would cause unnecessary delay of the resolution of this case, which, as previously discussed, prejudices Plaintiff.

## IV. A STAY OF DISCOVERY ON THE ISSUES OF WILLFULNESS AND DAMAGES IS NOT APPROPRIATE

The Court holds that a bifurcation of the issues of liability and damages is not appropriate in this case because it does not further the policies set forth in Rule 42(b). This court further holds that it is not appropriate to try the issues of willfulness and damages separate from the issue of liability. Accordingly, for the same reasons as set forth earlier, the Court holds that a stay of discovery on the issues of willfulness and damages is not warranted or appropriate. The Court may consider staying depositions of counsel who rendered the Opinion Letter until a factual basis is presented that Bunn–O–Matic had prior knowledge of the '664 patent.

## V. CONCLUSION

This Court has not seen a more simple patent case: one patent, one claim and one allegedly infringing product. There will also be only one trial. A single trial generally lessens the delays, costs and inconvenience for the court, the parties, and the witnesses. Bifurcation is to be ordered only when clearly necessary. An order of separate trials is the exception, not the rule. This case is no exception. For the forgoing reasons, **Defen-**

dant's Motion to Bifurcate Liability From Damages and Willfulness is denied.